Filed 5/29/13  R. Young Enterprises v. La Rue Gen. Contractors CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| R. YOUNG ENTERPRISES, INC., | B236671 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC413831) |
| v. | |
| LA RUE GENERAL CONTRACTORS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

David M. Shaby II & Associates, John J. Jackman for Plaintiff and Appellant.

Corey & Corey, Edward E. Corey and Stephan P. Hyun for Defendant and Respondent.

A party who had stipulated to arbitrate a dispute subsequently chose not to attend the arbitration. When the arbitrator's award went against the non-attending party, that party sought to vacate the award. Its motion to vacate was denied, and the trial court subsequently entered judgment confirming the award. The dissatisfied party appeals, contending the award was outside the scope of the arbitrator's authority and obtained by fraud. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Initial Complaint*

On May 21, 2008, Ashley Aarons hired La Rue General Contractors, Inc. (La Rue)[1] to remodel her home. The contract contained an arbitration clause, providing that " '[a]ny controversy or claim arising out of or related to this contract, or the breach thereof, shall be settled by arbitration . . . . ' "

Aarons did not pay all of the agreed-upon amounts due for the remodel. On May 13, 2009, La Rue brought suit against Aarons for breach of contract and foreclosure of mechanic's lien. La Rue alleged that it was owed $41,734.34.

2. *Cross-Complaint*

On June 18, 2009, Aarons brought a cross-complaint against La Rue, and its stucco subcontractor, R. Young Enterprises (Young). Her cross-complaint alleged causes of action, against La Rue, for breach of contract, breach of the implied covenant

---

[1] Subsequently, both La Rue General Contractors, Inc. and William La Rue would be named in Aarons's cross-complaint. We use "La Rue" to refer to both the corporate entity and the individual.

of good faith and fair dealing, and fraud. Aarons also alleged a cause of action for negligence against La Rue and Young, alleging that Young had negligently restuccoed[2] her home, and that La Rue had negligently supervised Young.

On July 16, 2009, La Rue answered Aarons's cross-complaint. Among its affirmative defenses, La Rue alleged the comparative fault of third parties.[3] It does not appear that Young filed an answer to the cross-complaint.[4]

### 3. *The Parties Stipulate to Arbitration*

On September 14, 2009, Aarons, La Rue and Young stipulated to binding arbitration. All three parties agreed "that the subject matter of the involved complaint and cross-complaint should be resolved in a single binding arbitration proceeding." The trial court approved the stipulation, and the matter proceeded to arbitration.

### 4. *Aarons and La Rue Settle Their Dispute*

As the date set for the arbitration hearing approached, the parties discussed settlement possibilities. The arbitration was to occur on October 28, 2010. On

---

[2]     Specifically, Aarons alleged that Young negligently failed to install weep screeds (which allow moisture to drain) and failed to properly cure the stucco. This resulted in the stucco cracking, causing water to penetrate the stucco, leading to mold and wet rot.

[3]     La Rue did not specifically identify the allegedly negligent third parties.

[4]     In its designation of the record on appeal, Young designated a document entitled "Answer by Defendant/Cross-defendant-R. Young Enterprises Inc," purportedly filed on July 16, 2009. No such document was included in the clerk's transcript. Upon discovering that several designated documents were omitted from the clerk's transcript, Young filed a motion to augment the record, which was granted. Although its answer had not been included in the record, Young did not identify that document in its motion to augment. The superior court case summary, included in the clerk's transcript, identifies only a single "Answer" filed on July 16, 2009; this is clearly the answer filed by La Rue.

3

October 14, 2010, Aarons and La Rue, but not Young, settled their dispute. Pursuant to the settlement agreement, Aarons and La Rue executed mutual releases. Aarons agreed to assign to La Rue her right to pursue both Young and Paul Pritchard (a subcontractor who allegedly performed negligent work on Aarons's terrace). In return, La Rue agreed to use its best efforts, at no cost to Aarons, to pursue damages against Young and Pritchard. La Rue agreed to pay Aarons $5,000 from any recovery. "Said sum shall be paid after said recovery is reduced by 33% for costs and attorneys fees ('net recovered amount'). La Rue and Aarons will equally split the first $10,000.00 in net recovered amounts until Aarons receives $5,000.00." Aarons also agreed that she would allow La Rue to use the reports of her experts in its pursuit of the subcontractors. "Any use of any experts retained by Ms. Aarons will be at La Rue's sole expense." The assignment contemplated by the settlement was memorialized in a separate document, wherein Aarons specifically assigned and transferred to La Rue her interest in the pending action against Young.

Aarons and La Rue *did not* seek a determination, under Code of Civil Procedure section 877.6, that their settlement was in good faith. Indeed, they did not disclose the complete terms of the settlement to Young. (Cf. Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 12:879, p. 12(II)-98 (rev. # 1 2012) [suggesting that if the settling parties do not wish to disclose the terms of the settlement, they can decline to pursue a good faith motion].)

Nonetheless, the record clearly indicates[5] that Young was informed that the settlement resolved all of the disputes between Aarons and La Rue, and that, as part of the settlement, La Rue received an assignment from Aarons of the claims asserted in her cross-complaint against Young.

5. *Young Indicates It Will Not Participate in the Arbitration*

On October 19, 2010, La Rue's counsel e-mailed Young's counsel, seeking the status of the matter and offering a settlement. That same day, Young's counsel responded, "[F]or a variety of reasons Young will not be arbitrating this matter more on this later but I am not persuaded that he is required to under the present conditions."[6]

On October 22, 2010, La Rue's counsel wrote Young's counsel, referencing the latter's e-mail of October 19, 2010. La Rue's counsel indicated that he had received no further explanation for Young's position, and took the position that Young was still bound by its prior stipulation to arbitrate. At this point, La Rue's counsel also indicated that La Rue possessed "equitable indemnity claims" against Young.

---

[5] Many of Young's assertions on appeal are purportedly supported by e-mails and letters between Young's counsel, Attorney John Jackman, and La Rue's counsel, Attorney Edward Corey. While the parties ascribe different meanings to the language in the letters and e-mails, neither party disputes the authenticity of the letters and e-mails in the record.

[6] As early as October 13, 2010, *before* La Rue settled with Aarons, Young's counsel e-mailed La Rue's counsel, stating, "Young has not ponied up the money for arbitration and is about to take the position that he is not a signatory to the agreement to arbitrate and so he's not going to participate."

5

On October 25, 2010, Young's counsel responded with a letter explaining that Young had initially agreed to arbitrate only as a matter of efficiency.[7] After La Rue's settlement with Aarons, those efficiencies no longer existed, and Young was therefore "not amenable to arbitration" with La Rue as its adversary. Young's counsel indicated that he was "investigating the proper manner to bring this back to the Superior Court."

On October 25 and October 26, 2010, several e-mails between the attorneys were exchanged.[8] La Rue's counsel indicated that he was unpersuaded by Young's counsel's letter, stating that Young "is in the exact same spot it was when it agreed to arbitration. It is facing a claim for negligence as a result of the work at the residence. La Rue now

---

[7] Specifically, Young stated that it "had no real forum choice prior to the settlement. Arbitration would have resulted in an award [on Aarons's negligence claim against La Rue] after which litigation would resume/continue as to Aarons on the cross-complaint against R. Young. The effects of res judicata and the possibility of conflicting results dictated that R. Young go along. Additionally there is the cost factor; the arbitration was being split evenly amongst three parties."

[8] Two additional points which will be relevant to our discussion were discussed in these e-mails. First, Young's counsel asked for a copy of the settlement agreement. La Rue's counsel did not transmit a copy, but instead stated, "Our deal with Aarons is simple. We owe her the first $5000 only." This was not entirely accurate; the terms of the settlement agreement provided not for La Rue to pay Aarons "the first $5000," but, rather, for La Rue and Aarons to *evenly split* the first $10,000 (after attorney fees). Second, in one e-mail, La Rue's counsel stated, "Make an offer. La Rue *resolved R. Young's dispute for it* and they need to make [La Rue] whole." (Italics added.) Young would subsequently argue that this statement meant that *there was no assigned claim*, in that La Rue's settlement with Aarons *resolved* Aarons's claims against both La Rue and Young. We note that Young's counsel did not interpret this statement in this manner at the time. Indeed, Young's counsel responded that La Rue's settlement resolved all of Aarons's causes of action against La Rue which did not involve Young (breach of contract, breach of the implied covenant, and fraud), and added, "This makes it difficult to say [La Rue] solved Young's problems." Moreover, La Rue's counsel responded, approximately one hour later, "The bottom line is that La Rue now owns [Aarons's] claim against R. Young."

6

owns that claim." Young's counsel disagreed, stating that Young had agreed to arbitrate when La Rue and Young had planned to offer identical defenses. Young's counsel indicated to La Rue's counsel, "Your expert is no longer suitable for our needs," and further stated that "we are not prepared to defend against [the] claims due to the recent movement of [La Rue] from one side of the VS to the other side." La Rue's counsel responded, "We never proposed having the same experts." As no agreement was reached on whether Young was required to arbitrate, Young's counsel indicated that it would be filing a motion to stay the arbitration.

On October 27, 2010, La Rue's counsel suggested continuing the arbitration and stipulating that the arbitration would include not only the assigned claim for negligence, but also other causes of action which La Rue sought to pursue against Young, including breach of contract, negligence, and indemnity. Young declined to do so, taking the position that it had agreed only to arbitrate the single negligence cause of action in Aarons's cross-complaint, and accusing La Rue of "sandbagging."

In response, La Rue's counsel immediately[9] stated it would arbitrate only the assigned negligence claim. Counsel added, "As we will only [arbitrate] on the assigned claim, there is no sandbagging. You were entitled to and able to prepare for that claim. We will not raise the additional claims in the arbitration but will, of course, reserve the right to do so in the [superior court]."

---

[9]     The responsive e-mail indicates it was sent nine minutes after Young's counsel's e-mail.

6. *Young's Ex Parte Application to Continue or Stay the Arbitration*

On October 28, 2010, the morning of the planned arbitration hearing, Young filed an ex parte application to continue or stay the arbitration date. The application argued good cause for a continuance existed because: (1) Young had been unable to depose the experts, as the partial settlement suspended the depositions which had been scheduled to go ahead on October 14, 2012; (2) Pritchard is a "necessary third party not joined in this arbitration"; and (3) the settlement constitutes a significant, unanticipated change in the status of the case, which rendered the case not ready to proceed, because Young had been unable to take the necessary depositions.

As to the issue of whether Young could still be required to arbitrate the assigned negligence claim, Young's application was somewhat ambiguous. The application was supported by a declaration of Young's counsel, in which he stated that he had told La Rue's counsel that Young "would likely not be willing to participa[te] in binding arbitration because he had not agreed to arbitrate the claims of [La Rue] as an assignee." However, the memorandum of points and authorities notes that La Rue sought to arbitrate the assigned claim, and stated, "Young did agree to arbitrate the 'assigned claim.' "

La Rue opposed the ex parte application on several grounds. La Rue argued that the ex parte application was untimely, as Young had known since October 14, 2010 that La Rue had planned to proceed with the arbitration on the assigned claim, and had stated as early as October 19, 2010 that it would not attend. La Rue also argued that

8

Young had stipulated to arbitrate the negligence claim, and that Young's failure to prepare for the arbitration did not justify a continuance.[10]

A hearing was held on the ex parte application, and it was denied. Young has failed to designate the reporter's transcript from the hearing on the ex parte application, and the trial court's order on the application, for inclusion in the record on appeal. The basis of the trial court's ruling is therefore unknown.[11]

### 7. *The Arbitration Proceeds Without Young in Attendance*

Young did not request the arbitrator to continue the arbitration. Young did not appear, either in person or by counsel, at the arbitration. The arbitration proceeded solely on the negligence claim assigned to La Rue by Aarons. La Rue offered the testimony of an expert to the effect that Young negligently failed to install a weep screed as required by the applicable building code. The expert opined that the cost to correct and fix the problem was $34,221.19. The arbitrator found that Aarons would have been entitled to an award against Young in that amount, and that La Rue was

---

[10]      La Rue's counsel submitted a declaration indicating that Young did not designate expert witnesses, nor provide any discovery as set forth in the case management order. Additionally, La Rue's counsel indicated that he had been advised by the arbitrator that Young "never paid the required arbitration fees further suggesting it had no intention of fully participating in the arbitration process."

[11]      At a later hearing, the trial court stated that, "[t]he court appropriately said address the request to continue the arbitration to the arbitrator . . . . " It is not entirely clear from the context of the discussion if the trial court was referring to the ruling on the ex parte application at this point.

9

entitled to the award by virtue of the assignment from Aarons. An award issued in favor of La Rue for $34,221.19, plus $7,566.67 in costs,[12] for a total of $41,787.96.

8.      *Young's Petition to Vacate the Award*

On March 22, 2011, Young filed a petition to vacate the award. The record on appeal does not contain Young's petition or any of the evidence in support thereof.[13] Based on La Rue's opposition to the petition to vacate, it appears that Young sought to vacate the award on the bases that: (1) Young's counsel had lacked authority to stipulate to arbitration; (2) the arbitration was not conducted pursuant to the stipulation and order for arbitration, in that the arbitration could proceed only if *all* claims between the parties were resolved, including La Rue's indemnity claim; and (3) the arbitration was unethically prosecuted by counsel for La Rue, who had previously defended against Aarons's cross-complaint pursuant to a joint defense agreement with Young.[14]

La Rue opposed the motion, and supported it with a declaration of counsel. As to Young's argument that the arbitration could proceed only if it included the indemnity claim, La Rue's counsel represented that the arbitration was specifically limited to the

---

[12]      The arbitrator denied La Rue's request for attorney fees.

[13]      Young did not designate its petition to vacate the award as part of the record on appeal. La Rue designated it in its respondent's notice designating record. However, the clerk's transcript contains only Young's notice of hearing on the petition to vacate, not the petition itself. Although Young subsequently moved to augment the record with mistakenly omitted documents, Young did not seek to augment the record with its petition to vacate the award.

[14]      Young argued several other bases not pursued in the instant appeal, including: (4) the award was uncertain and untimely amended (to add costs); (5) the award of costs was beyond the arbitrator's authority; (6) the award's citation to exhibits rendered it uncertain; and (7) the award was improperly served.

10

assigned negligence claim, because Young had objected to the inclusion of any claims which were not encompassed by the stipulation to arbitrate. As to the assertion of a joint defense agreement, La Rue's counsel declared that no such agreement existed. La Rue also submitted as an exhibit a copy of its settlement agreement with Aarons.

This was the first time Young had seen the settlement agreement, and Young's reply in support of its motion to vacate was based largely on the now-disclosed settlement agreement. Code of Civil Procedure section 877.5 governs "sliding scale" settlement agreements.[15] Such an agreement is defined as one "between a plaintiff . . . and one or more, but not all, alleged tortfeasor defendants, which limits the liability of the agreeing tortfeasor defendants to an amount which is dependent upon the amount of recovery which the plaintiff is able to recover from the nonagreeing defendant or defendants." (Code Civ. Proc., § 877.5, subd. (b).) Such an agreement typically "calls for the settling defendant to participate in the trial on the plaintiff's behalf, and provides for a settling defendant to be credited for amounts the plaintiff recovers from nonsettling defendants." (*Alcala Co. v. Superior Court* (1996) 49 Cal.App.4th 1308, 1316.)

Young took the position that the settlement agreement between La Rue and Aarons constituted a "sliding scale" agreement governed by Code of Civil Procedure section 877.5, since, under the agreement, La Rue pursued Aarons's assigned claim and the amount Aarons would recover from La Rue (up to $5,000) depended upon the amount La Rue ultimately recovered on Aarons's claim against Young (equally split the

---

[15] The agreements are also sometimes known as "Mary Carter" agreements.

11

first $10,000, net of attorney fees).  Code of Civil Procedure section 877.5 provides that no sliding scale settlement agreement is effective unless notice of intent to enter into the agreement has been served on all nonsignatory defendants (Code Civ. Proc., § 877.5, subd. (c)); and that the parties entering into the agreement shall promptly inform the court of the terms and provisions of such an agreement (Code Civ. Proc., § 877.5, subd. (a)).  As it appears that La Rue and Aarons had not complied with these provisions, Young argued that the arbitration award was tainted by La Rue's statutory violations.

Young further argued that the settlement agreement created a conflict of interest for La Rue's counsel, who, pursuant to Young's interpretation of the settlement agreement, actually *represented* Aarons against Young, and thus engaged in prohibited successive representations of opposing parties (Aarons and La Rue) in the same litigation.

Finally, Young argued that its rights were substantially prejudiced by the arbitrator's refusal to continue the arbitration.  Young would ultimately concede, however, that Young did not request the arbitrator to continue the arbitration, but had instead sought such relief from the trial court.[16]

---

[16]    At a later hearing, the trial court asked counsel for Young, Attorney David Shaby, for evidence that Young had sought a continuance from the arbitrator. Attorney Shaby identified only the letter written by Attorney Jackman, addressed to both La Rue's counsel and the arbitrator, in which Attorney Jackman, on behalf of Young, stated that he was "investigating the proper manner to bring this back to the Superior Court."  When the trial court subsequently stated, "I see nothing that shows any request for continuance having been made to" the arbitrator, Attorney Shaby stated, "Your Honor, I've got to fall on the sword there."

At the hearing on the motion to vacate, La Rue responded to the arguments raised by Young for the first time in its reply memorandum. Specifically, La Rue denied that the settlement agreement was a sliding scale agreement subject to the requirements of Code of Civil Procedure section 877.5. The trial court concluded that Young could not establish prejudice from any alleged error because it had failed to attend the arbitration. The trial court denied the motion to vacate.

9. *La Rue's Petition to Confirm the Award*

On August 3, 2011, La Rue petitioned to confirm the arbitrator's award. In opposition, Young relied on several grounds it had pursued in connection with its unsuccessful petition to vacate. Specifically, Young argued that the arbitration award could not be confirmed because it: (1) violated the trial court's order for a single arbitration; (2) violated Young's attorney work-product privilege under the common interest doctrine; and (3) was the product of a fraudulently concealed sliding scale settlement agreement.

As to the first ground, Young argued that the agreement to arbitrate encompassed all issues in the pending litigation. As La Rue sought to withhold its indemnity claim against Young for resolution in another forum, the arbitration was outside the scope of the stipulation and order for arbitration.[17] As to the second ground, Young presented

---

[17] In support of its motion, Young submitted a declaration of Attorney Jackman, which stated that after Young's ex parte motion for a continuance was denied, La Rue "announced the arbitration would proceed on the 'assigned claim' only." The chronology is mistaken. La Rue indicated the arbitration would proceed only on the assigned claim *prior to* Young's ex parte motion. Indeed, Young's ex parte motion

13

the declaration of his counsel to the effect that Young and La Rue had agreed to present a joint defense (to Aarons's cross-complaint) with Young relying on La Rue's experts, and the two cross-defendants agreeing not to bring cross-actions against each other. He further stated that he had met with La Rue's counsel and shared information and strategy regarding the joint defense of the case. In short, Young argued that La Rue's counsel was made privy to Young's confidential information and "should have been disqualified from prosecuting any action against Young." On the third ground, Young argued that he was harmed by the failure to disclose the sliding scale settlement agreement, because, had it been disclosed, he "would have received credit for the value of the Settlement Agreement to Aarons against any judgment recovered against Young in the negligence claim."

At the hearing on the motion,[18] counsel for La Rue again disputed the existence of a joint defense agreement. La Rue further argued that any of the issues raised by Young in its opposition to the motion to confirm could and should have been raised by Young at the arbitration hearing. The trial court agreed, indicating that Young did not appear at the arbitration and seek a continuance or any other remedy. Young's counsel stated, "It was my decision not to participate in the arbitration because the arbitration that was being conducted was not what we agreed upon, and Young had some very viable defenses that he could have raised at the arbitration, but we wanted to preserve

---

referenced La Rue's counsel's e-mail stating he would proceed in arbitration only on the assigned claim.

[18] No reply memorandum was filed.

his right to object, and we did not want to give the impression that we had waived any of those objections by attending the arbitration." The trial court responded, "I actually think it's quite the opposite. I think you waived them by not attending the arbitration. All that could have been put before the arbitrator and was not." Young then argued that he had not known, at the time of the arbitration, that the settlement agreement was a sliding scale settlement agreement. The trial court concluded that the settlement agreement was not a sliding scale agreement within the meaning of Code of Civil Procedure section 877.5. The court then concluded that the arbitration was not obtained through corruption, fraud, or other unfair means. The court further concluded that it could not assess whether there was any prejudice because Young had failed to appear before the arbitrator, seek a continuance in that forum, or otherwise raise its concerns before the arbitrator. The court granted the motion to confirm the award.

10. *Judgment and Appeal*

Judgment was entered in favor of La Rue in the amount of $41,787.96. Young filed a timely notice of appeal.[19]

### CONTENTIONS ON APPEAL

On appeal, Young argues the arbitration award should not have been confirmed for three reasons. First, Young argues that the arbitration award entered against him was entered on La Rue's indemnity claim, and that the parties had not agreed to

---

[19] The judgment was filed on October 31, 2011. Young's notice of appeal was filed prematurely, on October 14, 2011. Pursuant to California Rules of Court, rule 8.308(c), we construe the notice of appeal as filed immediately after the entry of judgment. The notice of appeal also indicates that the appeal is taken from an order after judgment. We construe the notice as an appeal from the judgment itself.

arbitrate the indemnity claim. Second, Young argues that the award was the result of the concealment, in violation of Code of Civil Procedure section 877.5, of a sliding scale settlement agreement. Third, Young argues that La Rue's counsel was ethically disqualified from conducting the arbitration against Young. We reject each argument and affirm.

*DISCUSSION*

1.    *Standard of Review*

It is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11.) Young seeks to rely on two such exceptions: (1) an award can be vacated if the arbitrator exceeded its powers (Code Civ. Proc., § 1286.2, subd. (a)(4)); and (2) an award can be vacated if it was procured by corruption, fraud, or other undue means (Code Civ. Proc., § 1286.2, subd. (a)(1)). In reviewing whether the arbitrator exceeded its powers by deciding an issue not before it, our review is de novo. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541.) For an unsuccessful party at an arbitration to prevail on a claim of corruption, fraud, or undue means, that party must establish not only the corruption, fraud, or undue means, but also that the party was prejudiced as a result. (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 826.)

16

2.   *The Arbitration Award Was Not Based on an Indemnity Claim*

In complete contrast to the positions it took before the trial court, Young argues that the arbitration award was based on La Rue's claim against it for indemnity, rather than on Aarons's assigned cause of action for negligence. Young appears to argue that, pursuant to the settlement agreement, La Rue settled Aarons's disputes with both La Rue and Young, and was therefore pursuing an indemnity claim against Young, the only possible claim remaining.  Young bases this argument on one sentence from an e-mail from La Rue's counsel, taken out of context, in which La Rue's counsel stated, "La Rue resolved R. Young's dispute for it and they need to make [La Rue] whole."  Young also relies on the mutual release paragraph of the settlement agreement, in which La Rue and Aarons agreed to release each other "and their subsidiaries, successors, predecessors, affiliates, assigns, officers, directors, employees, agents, servants, attorneys [and] insurance companies."

This premise, that the arbitration proceeded on La Rue's indemnity claim, is contradicted by the record.  La Rue's counsel's other letters and e-mails *clearly* indicate that La Rue chose not to arbitrate its indemnity claim and proceeded to arbitrate only the assigned negligence claim.  The settlement agreement between La Rue and Aarons provided for mutual releases, but did not release La Rue's *subcontractors*, and specifically provided that Aarons's rights against Young were assigned to La Rue. Moreover, the arbitration award itself expressly indicates that it was based solely on the assigned negligence cause of action.  Indeed, at the hearing on the petition to compel,

17

Attorney Shaby, for Young, stated, "the arbitration went forward as to the assign[ed] claims only."[20]

As such, we need not consider whether any indemnity claim was within the scope of the stipulation to arbitrate. That cause of action was simply not arbitrated. The only cause of action arbitrated was Aarons's cause of action against Young for negligence, which had been assigned to La Rue.

### 3. *The Settlement Agreement Was Not Improperly Concealed*

Young next argues that the settlement agreement between La Rue and Aarons was improperly concealed. There is no statutory requirement that a settlement agreement generally be disclosed to a non-settling party. Young argues, however, that the agreement in this case was a sliding scale agreement, subject to disclosure requirements under Code of Civil Procedure section 887.5.

As noted above, a sliding scale settlement agreement is one "between a plaintiff . . . and one or more, but not all, alleged tortfeasor defendants, which limits the liability of the agreeing tortfeasor defendants to an amount which is dependent upon the amount of recovery which the plaintiff is able to recover from the nonagreeing defendant or defendants." (Code Civ. Proc., § 877.5, subd. (b).) While, at first blush,

---

[20] That Young's argument on appeal is completely undermined by both the record and its arguments below is clear. Indeed, in its brief on appeal, Young argues that the trial court erred in denying its application to continue the action because the court "had jurisdiction to stay the pending arbitration and consider arbitrability of the newly manufactured claim of indemnity." The record, however, establishes that Young did not seek to continue the arbitration for a determination of the arbitrability of La Rue's indemnity claim. Rather, Young *conceded* in its application for continuance that La Rue had indicated it would proceed to arbitration only on the assigned negligence claim.

the settlement agreement in this case appears to fall within this statutory language, in reality, it does not. Under the settlement agreement, La Rue agreed to pay Aarons up to $5000, if it recovered twice that amount on the assigned negligence claim. Thus, the amount which La Rue agreed to pay Aarons was dependent on the amount which *La Rue* (the settling defendant) would recover from Young, not the amount *Aarons* (the plaintiff) would recover from Young. As such, it did not fall within the language of Code of Civil Procedure section 887.5.[21]

Moreover, the agreement did not fall within the spirit of Code of Civil Procedure section 887.5. In the typical sliding scale agreement, the settling defendant guarantees that the plaintiff will receive a certain amount, and if the plaintiff does not receive that amount from the nonsettling defendants, the settling defendant will make up the difference. (*E.g., Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 866.) When the settling defendant remains in the action, there is a possibility for the nonsettling parties, the court, or the jury, to be misled, because the settling defendant is, in fact, aligned with the plaintiff. (*Alcala Co. v. Superior Court, supra,* 49 Cal.App.4th at pp. 1314, 1317.) It is in the settling defendant's financial interest for the plaintiff to

---

[21]    Young does not specifically argue against the trial court's conclusion that the settlement agreement was not a sliding scale agreement within the meaning of Code of Civil Procedure section 887.5; Young simply assumes that the agreement is subject to the statute. To the extent that Young makes such an argument, Young merely states, "[t]he settling Defendant, [La Rue], participated at the arbitration on behalf of the Plaintiff and the settling Defendant ([La Rue]) received credit from what he recovers from the non-settling Defendant, Young." This is a misstatement of the terms of the settlement agreement. The agreement did not provide that La Rue would pay Aarons $5,000 unconditionally, and would *receive credit* against that amount based on the recovery from Young. Instead, the agreement provided that La Rue owed Aarons *nothing*, unless there was a recovery against Young.

receive the highest possible judgment from the nonsettling defendants, as this will reduce the amount the settling defendant will be required to pay under the agreement. For this reason, the Legislature has mandated the disclosure of sliding scale agreements. "By eliminating the secrecy of sliding scale agreements the Legislature has avoided the primary mischief that the fact finder will not understand the true alignment of the interests of the litigating parties and their witnesses." (*Id*. at p. 1317.)

But that mischief is not possible in a case such as this one, where the plaintiff's cause of action against the nonsettling defendant has been assigned to the settling defendant. In that situation, the trier of fact is well aware that the settling defendant has been realigned with the plaintiff; the settling defendant is *pursuing the plaintiff's cause of action*. Thus, no disclosure is necessary, and there is no reason to bring such an agreement into the limited scope of Code of Civil Procedure section 887.5.[22]

In short, the agreement did not fall within the letter or spirit of Code of Civil Procedure section 887.5, so disclosure was not necessary. Thus, the award was not tainted by fraud for the failure to disclose the settlement agreement.

We pause, however, to address a misunderstanding in Young's briefing on the issue of prejudice. Young argues that, pursuant to the settlement agreement, La Rue "has been absolved of any and all responsibility" and that La Rue "left Young, his

---

[22]     Putting it another way, La Rue had an incentive to obtain a large recovery on Aarons's assigned claim against Young *not* because it would lessen La Rue's obligation to pay Aarons (a sliding scale agreement), but because La Rue would receive half of the first $10,000 net recovered and everything over that amount. It was the assignment, not the sliding scale nature of the amount to be paid Aarons, which changed the alignment of the parties. The assignment, however, was fully disclosed to both Young and the arbitrator, so there was no danger of either of them being misled.

20

sub-contractor, solely responsible for the liability." This is, to some degree, untrue.

A settlement entered into *in good faith* has two immediate effects: first, it discharges the settling defendant from liability for contribution or indemnity to the nonsettling defendants (Code Civ. Proc., §§ 877, subd. (b), 877.6, subd. (c)); and second; it reduces the claims against the nonsettling defendants in the amount stipulated by the release, or the amount of consideration paid for it, whichever is greater[23] (Code Civ. Proc., § 877, subd. (a)). There is a statutory procedure for obtaining a ruling on the issue of the good faith of such a settlement. (Code Civ. Proc., § 877.6.) In this case, La Rue and Aarons did not seek a determination of the good faith of their settlement. Therefore, Young would not be barred by the settlement from pursuing La Rue for contribution or indemnity.

4.      *La Rue's Counsel Was Not Disqualified*

Finally, Young argues that La Rue's counsel was ethically disqualified from pursuing the assigned claim in arbitration, because of: (1) confidential information La Rue's counsel had learned pursuant to an alleged joint defense agreement; and (2) counsel's successive representation of La Rue and Aarons, opposing parties in the same litigation.

Preliminarily, this assertion is barred by Young's failure to move for La Rue's counsel's disqualification. If Young believed that La Rue's counsel should have been

---

[23]      When, as here, non-monetary consideration is given, such as the dismissal of La Rue's complaint against Aarons and the assignment of Aarons's cross-complaint against Young, the settling parties are required to calculate a value of the consideration given. (*Abbott Ford, Inc. v. Superior Court, supra,* 43 Cal.3d at pp. 878-879; *Arbuthnot v. Relocation Realty Service Corp.* (1991) 227 Cal.App.3d 682, 690.)

disqualified from pursuing the assigned claim, it should have moved for counsel's disqualification.[24] Instead, Young did not so move, did not participate in the arbitration at all, allowed an award to be entered against it, and then attempted to raise the assertion in its challenge to the award.

In any event, the challenge is meritless. The trial court concluded that there was no joint defense agreement. This conclusion is supported by substantial, if not overwhelming, evidence. Young never presented the court with any such written agreement, nor any communications from La Rue documenting such an agreement. Instead, the e-mails between counsel for Young and La Rue indicate that, while the parties were generally aligned against Aarons, both parties left open the possibility of pursuing each other for Aarons's damages.[25] Moreover, there was no improper successive representation. La Rue's counsel never represented Aarons; La Rue simply accepted assignment of Aarons's claim against Young. Young believes that there was

---

[24] Young was aware that La Rue was pursuing the assigned claim against it in the arbitration shortly after the settlement was made; thus, its concerns about La Rue's counsel possibly using confidential information against it existed before it first moved to continue the arbitration in the trial court.

[25] Indeed, on October 13, 2010, Attorney Jackman, on behalf of Young, e-mailed La Rue's counsel indicating that Aarons had offered a settlement under which all parties walk away and Young was considering accepting the deal. Attorney Jackman stated, "I'm not going to leave [La Rue] out there on his own until absolutely necessary but at some point my guy is going to take the deal and take his chances with [La Rue]." Another e-mail shows Attorney Jackman taking the position that La Rue had no indemnity rights against Young because they had no written contract. Both of these e-mails predated La Rue's settlement with Aarons.

22

a successive representation,[26] in that the settlement agreement provided, "La Rue represents that it will use its best efforts, at no cost to Aarons, to pursue in arbitration or otherwise, damages against" Young and Pritchard. This language is merely an agreement for *La Rue* to use its best efforts in pursuing the assigned claims; not an agreement for *La Rue's counsel* to *represent* Aarons.

---

[26]     We note that Young's argument that La Rue represented Aarons against Young is contrary to Young's argument that La Rue settled Aarons's claims against Young and simply arbitrated its own indemnity claim against Young. Both arguments, however, are contrary to the record. La Rue pursued an assigned negligence claim against Young, nothing more.

## *DISPOSITION*

The judgment confirming the arbitration award is affirmed.  La Rue shall recover its costs on appeal.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.